IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3157-FL

| | |
|---|---|
| KEITH BAYSEAM OLIVER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| DALE BUTLER SHERIFF DONNIE | ) |
| HARRISON, and HEIDI STEINBECK, | ) |
| | ) |
| Defendants. | ) |

This matter comes before the court on defendants' motion for summary judgment (DE 84) pursuant to Federal Rule of Civil Procedure 56. Also before the court is plaintiff's renewed motion to compel defendants to comply with written depositions (DE 92) and motion to enter response to defendants' supplemental memorandum (DE 99). Defendants did not respond to plaintiff's motion to enter response to their supplemental memorandum, but the remaining motions were fully briefed. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants plaintiff's motion to supplement, grants defendants' motion for summary judgment, and denies as moot plaintiff's renewed motion to compel.

**STATEMENT OF THE CASE**

On August 6, 2012, plaintiff, then a pretrial detainee incarcerated at the Wake County Detention Center (the "detention center"), filed this action *pro se* pursuant to 42 U.S.C. § 1983, against defendants Wake County Sheriff, Donnie Harrison ("Harrison") and Director of Wake County Detention Center, Dale Butler ("Butler"). Plaintiff alleged that defendants Harrison and

1

Butler violated his rights pursuant to the Fourteenth Amendment to the United States Constitution because they enforced a detention center policy requiring plaintiff to be shackled while showering for a period of thirty (30) days while plaintiff was on administrative segregation status. Plaintiff states that such conditions denied him the ability to maintain his "hygienic needs" and "subject[ed] [him] to remain in a state of fifth and body odor for the duration of [his] stay in segregation." (Compl. p. 4.) Plaintiff also alleged that defendants violated the Religious Land Use and Institutionalized Persons Act of 2000, § 2 et seq., ("RLUIPA") and the First Amendment to the United States Constitution when they failed to accommodate his request for a Kosher diet in accordance with his Orthodox Jewish faith.

Plaintiff subsequently filed a motion to amend his complaint and a motion to supplement the record. On January 8, 2013, the court entered an order granting plaintiff's motions to amend and to supplement. The court, in the same order, also conducted a frivolity review of plaintiff's pleadings pursuant to 28 U.S.C. § 1915, and allowed plaintiff to proceed with his action.

On January 17, 2013, plaintiff filed a motion for leave to file a second amended complaint to include a claim against Lieutenant Bailey-Lee and M. Wilson arising out of their alleged participation in the North Carolina Department of Public Safety's administrative remedy procedure. The court subsequently denied plaintiff's second motion to amend as futile. Pursuant to a motion filed by defendants, the court also stayed discovery until April 3, 2013.

On May 9, 2013, defendants moved to consolidate this action with an action plaintiff previously filed in this court, Oliver v. Butler, No. 12-CT-3060-FL (E.D.N.C. Mar. 12, 2012) ("Oliver I"), and for a stay of discovery pending the court's resolution of the consolidation issue.

Plaintiff subsequently filed a motion to amend his complaint to include Lieutenant Heidi Steinbeck ("Steinbeck") as a defendant in this action, and to include a claim for retaliation. Plaintiff also filed a motion "to enter authoritative memorandum," motion for leave to file the affidavit of William Charles Klinger, and a motion to compel discovery.

On August 1, 2013, the court entered an order in which it denied defendants' motion to consolidate on the grounds that each of plaintiff's actions raised different issues. The court also denied, without prejudice, plaintiff's motion to compel, denied plaintiff's motion to enter an authoritative memorandum, and denied as moot defendants' motion to stay discovery. The court, however, granted plaintiff's motion to amend and added Steinbeck as a defendant in this case. Finally, the court also granted plaintiff's motion to file the affidavit of William Charles Klinger.

On November 15, 2013, plaintiff filed a motion for a court order instructing defendants to comply with plaintiff's request to take written depositions of potential witnesses. The court subsequently entered an order denying plaintiff's motion, but urged the parties to confer and to facilitate plaintiff's ability to conduct the requested depositions. Following the court's order, plaintiff filed a renewed motion to compel defendants to comply with written depositions.

In the interim, on April 7, 2014, defendants filed a motion for summary judgment,[1] arguing that plaintiff is unable to establish a constitutional violation. Alternatively, defendants argue that they are entitled to the affirmative defense of qualified immunity. The motion was fully briefed.

On April 23, 2014, plaintiff filed a motion to strike the affidavit of Wake County Medical Director Dr. Obi Umesi ("Dr. Umesi") which defendants submitted in support of their motion for

---

[1] Defendants, in their motion for summary judgment, brief all of the issues raised in both this case and Oliver I, despite the fact that the actions were not consolidated. With the exception of plaintiff's retaliation claim, the instant order will consider only the issues plaintiff raised in this action. The court addresses the remaining issues in Oliver I.

3

summary judgment. Plaintiff contended that Dr. Umesi's statements regarding plaintiff's medical history and care at the detention center were, *inter alia*, unsupported by plaintiff's medical records. Plaintiff also filed a renewed motion to compel defendants to comply with written depositions.

On June 6, 2014, the court in Oliver I entered an order directing defendants to supplement the record and to provide a copy of plaintiff's medical records pertinent to Dr. Umesi's affidavit, and directing defendants to submit a new affidavit from Dr. Umesi with citation to the applicable medical records. Defendants complied with the court's order to supplement issued in Oliver I. Plaintiff, in this case, subsequently filed a motion for leave to file a response to defendants' supplemental memorandum, along with plaintiff's supplemental memorandum. Finally, on November 12, 2014, defendants responded to plaintiff's renewed motion to compel defendants to comply with the written depositions and stated that the depositions at issue had been completed.

## STATEMENT OF THE FACTS

The following is a summary of the undisputed facts in this action. The court begins with the facts relating to plaintiff's religious diet. Plaintiff has been incarcerated at the Wake County Detention Center (the "detention center") in Raleigh, North Carolina on numerous occasions over the years. (Harrison Aff. ¶ 8.) Most recently, while incarcerated on April 5, 2012, plaintiff submitted a written request for a special diet in which he declared himself a member of the Orthodox Jewish Faith and requested a Kosher diet.[2] (Steinbeck Aff. ¶ 8 and Ex. 3.)

Upon receiving plaintiff's request for a Kosher diet, Steinbeck notified plaintiff that inmates or detainees requesting a Kosher diet could choose "either a Lacto-Ovo-Vegetarian Diet or Alternative Diet that did not contain pork, shellfish, or catfish." (Id. ¶ 9.) Both the detention center

---

[2] On October 17, 2011, during a prior period of incarceration, plaintiff declared himself to be a member of the Rastafarian religion and requested a Rastafarian diet. (Steinbeck Aff. ¶ 7 and Ex. 2.)

4

and DPS followed this policy at that time. (Id.) Plaintiff was unhappy with the Lacto-Ovo-Vegetarian or Alternative diet options, and complained that such diets did not satisfy his need for a Kosher diet. (Id. ¶ 10.)

In August 2012, staff at the detention center discovered that the North Carolina Department of Public Safety ("DPS") had modified their religious diet policy, and the detention center began serving Kosher diets to those inmates with a sincerely held religious belief that a Kosher diet was necessary. (Id. ¶ 15.) On December 21, 2012, plaintiff was transferred from the detention center to DPS custody pursuant to a safekeeping order. (Id. ¶ 17.) Upon his transfer to DPS custody, plaintiff declared that he practiced Judaism, and at some point began receiving Kosher meals. (DE 59 Ex. 1.) On August 14, 2013, the detention center altered their religious diet policy, and the detention center now offers Kosher meals. (Steinbeck Aff. ¶ 23.)

The court now turns to the facts relating to plaintiff's complaints about the detention center's lock down policies for inmates confined on administrative segregation status. Plaintiff was assigned to a thirty (30) day term of administrative segregation during his incarceration at the detention center. (Harrison Aff. ¶ 10.) The detention center's policy requires that inmates or detainees on lock down be in full restraints any time they leave their cell for any reason. (Id.) Accordingly, inmates on lock down must wear handcuffs while taking a shower. (Id.)

On December 21, 2012, plaintiff was transferred to DPS custody pursuant to a safekeeping order in accordance with N.C. Gen. Stat. § 162-39. (Steinbeck Aff. Ex. 5.) The safekeeping order stated that plaintiff was being transferred to DPS custody for security and management purposes. (Id.) The order stated that "[plaintiff] has lawsuits against the county and has become a threat to the

5

security of jail operations." (Id.) Plaintiff remained in DPS custody until he was convicted of North Carolina State felonies on February 27, 2013. (Harrison Aff. ¶ 8.)

## DISCUSSION

A.  Motion to Supplement

Plaintiff seeks leave of court to supplement his response to defendants' motion for summary judgment. For good cause shown, plaintiff's motion is GRANTED, and the court will consider plaintiff's July 7, 2014, supplemental filing.

B.  Renewed Motion to Compel

In his renewed motion to compel, plaintiff asks the court to intervene and assist him with executing written depositions in this case. Defendants have presented evidence reflecting that the depositions at issue have been completed. Plaintiff does not provide any evidence to the contrary. Thus, plaintiff's renewed motion to compel is DENIED as Moot.

C.  Motion for Summary Judgment

  1.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587

6

(1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

    2.    Analysis

Defendants raise the affirmative defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The court will now consider plaintiff's claims in turn.

    a.    RLUIPA Claim

Defendants argue that plaintiff's request for injunctive relief as to his RLUIPA claim now is moot because plaintiff was transferred from the detention center to DPS custody. Federal courts may only decide actual cases or controversies. See U.S. Const. art. III, § 2. A "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). "The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence." United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) (quotation omitted). To satisfy the Article III case or controversy requirement, "[a] litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." Iron Arrow Honor Soc'y v. Heckler, 464 U.S.

7

67, 70–71 (1983). When a case or controversy ceases to exist, the litigation becomes moot and the federal court no longer possesses jurisdiction to proceed. Id.

Here, plaintiff was transferred from the detention center to DPS custody where a Kosher diet was available. Plaintiff has not presented any evidence to suggest that his claim for injunctive relief was not rendered moot by his transfer. Thus, plaintiff's request for injunctive relief in this case is MOOT. See Incumaa v. Ozmint, 507 F.3d 281, 287 (4th Cir. 2007) (holding that transfer or release moots claim for injunctive relief under RLUIPA.)

As for plaintiff's request for monetary damages, defendants argue that plaintiff is not entitled to such relief pursuant to RLUIPA. RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution." 42 U.S.C. § 2000cc-1(a). RLUIPA provides an avenue for an inmate to remove a substantial burden on his religious exercise through injunctive relief, it does not authorize claims for official or individual capacity monetary damages. Sossamon v. Texas, – U.S. –, 131 S.Ct. 1651, 1663 (2011) (finding RLUIPA does not authorize a private cause of action for money damages against prison personnel for action taken in their official capacity); Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009). Based upon the foregoing, plaintiff may not recover monetary damages under RLUIPA. Thus, the court GRANTS defendants' motion for summary judgment as to plaintiff's RLUIPA claim.

b. First Amendment Claim

To the extent plaintiff's complaint could be construed as alleging a claim pursuant to the First Amendment to the United States Constitution, the court now addresses any such claim. The Free Exercise clause of the First Amendment, made applicable to the states through the Fourteenth Amendment to the United States Constitution, provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend. 1; Goodall by Goodall v. Stafford County School Bd., 60 F.3d 168, 170 (4th Cir. 1995).

To state a claim that detention center officials or regulations violated an inmate or detainee's right to the free exercise of his religion, a plaintiff must first prove that the challenged official action substantially burdened his exercise of a sincerely held religious belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989); Wall v. Wade, 741 F.3d 492, 498 (4th Cir. 2014); Kreiger v. Brown, 496 F. App'x 322, 325 (4th Cir. 2012) ("[T]o demonstrate that his religious practice has been substantially burdened, a plaintiff must demonstrate that a governmental entity substantially pressured him to modify his behavior and to violate his religious beliefs."). A "substantial burden" on religious exercise occurs if it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or . . . forces a person to choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006).

Defendants argue that plaintiff cannot establish that prison officials' response to his request for a Kosher diet substantially burdened his religious practice. The record in this case reflects that plaintiff has been inconsistent with the declarations of his religious faith while incarcerated. In particular, plaintiff declared himself a member of the Rastafarian faith on October 17, 2011, and a

9

member of the Orthodox Jewish faith on April 5, 2012. (Steinbeck Aff. ¶¶ 7, 8 and Exs. 2, 3.) Despite this inconsistency, prison officials attempted to accommodate plaintiff's religious needs when they transferred plaintiff to DPS custody, at least in part, to accommodate plaintiff's request for a Kosher diet and plaintiff now is receiving a Kosher diet. (Id. ¶ 17; (DE 59), Ex. 1.) Further, rather than explain how his diet at the detention center substantially burdened the practice of his religion, plaintiff, instead, admits that Judaism is a continuing learning experience for him "in which reflections of the truth are released and revealed day by day, moment by moment." ((DE 59), p. 2.) Moreover, plaintiff, in fact, has indicated a willingness to concede the dismissal of his religious based claims if defendants provide him with a copy of newly created policies and procedures applicable to Kosher meals. (Pl.'s Resp. p. 9.) Plaintiff has presented no evidence to suggest that the detention center staff put substantial pressure on him to modify his behavior or to violate his religious beliefs. Instead, plaintiff's behavior suggests that he was attempting to abuse the religious diet accommodations provided by the detention center in an effort to obtain more desirable food options. See (Speer Aff.[3] ¶ 5.)

Based upon the foregoing, plaintiff is unable to establish that defendants substantially burdened the exercise of his Orthodox Jewish faith, and fails to establish a First Amendment violation. See Wall, 741 F.3d at 499 ("As a preliminary matter, prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic.") (citation and quotation omitted). Thus, defendants are entitled to qualified immunity for this claim.[4]

---

[3] Chaplain Randall J. Speer ("Speer") submitted an affidavit in support of defendants' motion for summary judgment. Speer serves as the chaplain for DPS. (Speer Aff. ¶ 1.)

[4] To the extent plaintiff alleges that his meals were inadequate, such claim is addressed in Oliver I.

c. Shower Restraints

Plaintiff alleges that defendants violated his Fourteenth Amendment rights by enforcing a policy which required plaintiff to shower while wearing handcuffs for the thirty (30) days he was assigned to administrative segregation. Plaintiff contends that this practice interfered with his ability to maintain basic hygiene.

To establish that a condition or restriction of confinement is constitutionally impermissible "punishment," a pretrial detainee must show "either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." Martin v. Gentile, 849 F.2d 863, 870 (4th Cir.1988) (citing Bell v. Wolfish, 441 U.S. 520, 538–40 (1979)). The objective prong of a conditions claim requires proof of an injury. Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir.1993). "Only an extreme deprivation, that is, a serious or significant physical or emotional injury resulting from the challenged conditions, or substantial risk thereof, will satisfy the objective component of an Eighth Amendment claim challenging the conditions of confinement." De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013) (quotations omitted).

The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know[] of and disregard[] an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1979); see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious

11

injury). "The due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner ...." Martin, 849 F.2d at 870.

Generally, requiring an inmate or detainee to wear restraints while showering does not constitute a constitutional violation. See Williams v. Ramos, 71 F.3d 1246, 1248–49 (7th Cir.1995) (concluding a segregated inmate's "catalogue of harms," which included being locked in a closed-front cell 24 hours per day, being handcuffed when permitted to leave his cell for showers, medical care, or exercise, being restricted from activities available to other inmates, and having only limited contact with staff and other inmates, did not greatly exceed what one could expect from prison life); LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir.1993) (no Eighth Amendment violation where inmates were restrained in handcuffs and shackles during their showers); see also, Rankins v. Hargave, No. 3:14-CV-194, 2014 WL 1910792, at *3 (W.D.N.C. May 13, 2014) ("As for Plaintiff's allegations regarding being required to wear handcuffs in the shower during the lock down, these allegations also fail to state a claim of cruel and unusual punishment, as prison officials were clearly within their right to require restraints during the lock down as a security measure." (citation omitted)). Such conditions, however, may violate the constitution if the inmate or detainee suffers any serious physical injury as a result of showering in restraints. See De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (citing Strickler, 989 F.2d at 1381); see also, Bolding v. Va. Beach Corr. Ctr., No. 3:11cv105–HEH, 2012 WL 1438815, at *3 (E.D.Va. Apr. 25, 2012) ("[P]laintiff has failed to allege facts that suggest requiring him to shower in restraints amounted to anything more than routine discomfort.") (internal quotation omitted).

Here, plaintiff does not allege that he suffered any serious physical injury as a result of being required to wear restraints in the shower.[5] Thus, plaintiff failed to establish that having to shower in restraints for a thirty (30) day period of time violated his constitutional rights.

To the extent plaintiff challenges the detention center's policy requiring inmates and detainees to be restrained outside of their cell, such challenge also fails. Defendant Harrison states that requiring inmates on lock down to wear handcuffs while showering is necessary for security purposes because there is only one officer in the lock down pod while an inmate is out of his cell. (Harrison Aff. ¶ 10.) Such justification for the challenged shower policy is reasonably related to a legitimate governmental interest, and plaintiff has not shown that the restriction at issue was imposed with express intent to punish, or that the restriction was not reasonably related to a legitimate nonpunitive governmental objective. See Sanders v. Hopkins, No. 97-3082, 1997 WL 755276, at *2 (10th Cir. 1997) ("The condition or restriction of requiring a pretrial detainee in disciplinary segregation to wear restraints while showering is reasonably related to the legitimate governmental objective of promoting security in the detention facility. Thus, under Bell, the policy of requiring inmates on lock down to shower while wearing handcuffs does not amount to a 'punishment' which would violate the detainee's due process rights."). Based upon the foregoing, plaintiff failed to establish a constitutional violation, and defendants are entitled to qualified immunity for this claim.

    d.    Retaliation Claim

Plaintiff alleges that defendants Harrison, Butler, and Steinbeck violated his constitutional rights when they transferred him from the detention center to DPS custody at Central Prison pursuant to a safekeeping order in retaliation for filing the instant lawsuit in violation of the First Amendment

---

[5] Plaintiff states in his complaint that the practice of requiring inmates or detainees to shower in restraints could potentially lead to injury, but does not allege that he suffered any actual injury.

to the United States Constitution. Plaintiff raised this claim in Oliver I, and the court fully adjudicated the claim in that action. For the reasons set forth in Oliver I, defendants' motion for summary judgment likewise is GRANTED in this case.

## CONCLUSION

For the foregoing reasons, plaintiff's renewed motion to compel (DE 92) is DENIED as MOOT, but his motion to enter a response to defendants' supplemental memorandum (DE 99) is GRANTED. Defendants' motion for summary judgment (DE 84) is GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 26th day of February, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge